(103 So. 314)

No. 26531.

## HOPKINS v. NATIONAL SURETY CO.

(June 27, 1924. On Rehearing, Jan. 5, 1925. Further Rehearing Denied March 2, 1925.)

*(Syllabus by Editorial Staff.)*

On Rehearing.

1. **Principal and surety** ⟨⟩112—**Suretyship; obligation under indemnity bond held discharged by principal's payment.**

In view of Civ. Code, art. 3062, obligations of surety company on indemnity bond, required by Ordinance No. 2346 of City of New Orleans to be given for each vehicle employed in transporting passengers, *held* discharged, where injured party received sum from principal exceeding amount of bond; such obligation being not original indemnity contract, but merely collateral undertaking.

2. **Municipal corporations** ⟨⟩703(1)—**Bond required by jitney ordinance held collateral rather than original obligation.**

Bond required by Ordinance No. 2346 of City of New Orleans to be given for each vehicle employed in transporting passengers *held* not an original obligation or indemnity contract, but merely collateral undertaking, under rule

that bond by third party is merely cumulative security and does not supersede original right.

St. Paul, J., dissenting.

Appeal from Civil District Court, Parish of Orleans; M. M. Boatner, Judge.

Consolidated suits by Mrs. Augusta Hopkins, widow of Charles Hopkins, against the National Surety Company, and by the National Surety Company against Mrs. Augusta Hopkins. From a decree, the latter appeals. Affirmed on rehearing.

Paul W. Maloney, of New Orleans, for appellant.

Wm. B. Grant, of New Orleans, for appellee.

By Division C, composed of OVERTON, ST. PAUL, and THOMPSON, JJ.

ST. PAUL, J. For convenience we state the preliminaries by quoting as follows from Horsthemke v. National Surety Co., 151 La. 55, 91 So. 544, since in that particular the facts are identical in both cases, to wit:

I.

By an ordinance, No. 2346, adopted by the commission council of the city of New Orleans April 27, 1915, regulating the transportation of passengers for fares in that city, it is provided that persons or corporations engaged in the business of transporting passengers shall file with the commission of public safety an indemnity bond for the sum of $5,000 for each and every vehicle used in such business—

"The said indemnity bond or bonds to be executed by a surety company or companies duly authorized to do business in the state of Louisiana, payable to the city of New Orleans, and shall contain stipulation that in the event any person or persons who may sustain damages to his or their persons or property as the result of the fault of the person, firm, association of persons, or corporation concluding said business or his or their agents, servants or employees, he or they shall have his or their right of action on said indemnity bond as fully

and to the same extent as if said bond was made and executed directly in favor of the claimant of such damages. * * *"

In accordance with the provisions of that ordinance, the New Orleans Railway & Light Company executed the bond which is involved in this case, with the National Surety Company as surety, the condition whereof is in the following language:

"Now therefore the condition of this instrument is such that if the principal indemnifies the obligee, or any person or persons who sustain damages to his or their person or property as a result of the fault of the principal, its agents, servants or employees in any amount not to exceed the sum of five thousand dollars * * * then this instrument shall be null and void, otherwise to remain in full force and effect. * * *"

And again: "The provisions of the ordinance must be read into the bond, and they fix the rights as well as the obligations of the surety." (The ordinance may be seen in full in Le Blanc v. City of New Orleans, 138 La. 247, 70 So. 212).

## II.

On January 2, 1922, plaintiff obtained final judgment against the New Orleans Railway & Light Company for $10,000, with interest, etc. See Hopkins v. N. O. Railway & Light Co., 150 La. 61, 90 So. 512, 19 A. L. R. 1362.

On June 4, 1923, plaintiff obtained final judgment also against National Surety Company (defendant here) for $5,000. See Hopkins v. National Surety Co., 154 La. 61, 97 So. 297.

The judgments speak for themselves; and show that the railways company was condemned *as principal* for $10,000, and the surety company (this defendant) *as surety* up to the sum of $5,000.

## III.

After the judgment of June 4, 1923, plaintiff issued execution against the surety company; and the latter at once enjoined the seizure on the ground that plaintiff had compromised and settled with the principal, thereby discharging the surety.

Plaintiff thereupon applied to this court for a rule upon the *district judge* and *counsel* for the surety company to show cause why they should not be *held in contempt* of this court. Which rule was, *of course,* promptly denied.

The surety company now pleads the action of this court, on the rule for contempt *against the counsel,* as res judicata upon the issues involved in the injunction; which plea is deserving of, and will have, no more serious consideration than the rule itself.

## IV.

Of course, where the creditor *voluntarily* compromises with the principal, or otherwise voluntarily discharges the debt, then the surety is entitled to his release. R. C. C. 3062.

But it is a wholly different matter where the creditor simply takes from the principal debtor all the latter has to give (and therefore all the creditor can possibly get), and then looks to the surety for the balance of the debt.

Under the system prevailing in *this* state, that is precisely what the creditor is obliged to do; since he cannot resort to the property of the surety until he has first exhausted that of the principal, unless the surety has expressly agreed otherwise. R. C. C. 3045.

## V.

The facts are that during all these proceedings the railways company was in the hands of a receiver appointed by the federal court for this district; that, whilst plaintiff's suit against the surety company was pending on appeal before this court, the railways company was reorganized for the purpose of taking it out of the hands of the

receiver; that the *ordinary creditors* of said railways company were tendered common stock, at par, in the new corporation (New Orleans Public Service, Incorporated); that if they failed to take *this*, they would likely (almost certainly) get *nothing*; that plaintiff advised defendant herein of that situation, and offered defendant to cede it her claim against the railways company, on payment of her judgment against it (which, however, was wholly *unnecessary*, since the surety company had a direct right of action against said railways company, R. C. C. 3057, Nos. 1 & 2); that plaintiff received in full for her judgment $11,338.84 in stock of said new company; that plaintiff offered said stock to defendant at par, who refused to take it; that thereupon plaintiff sold said stock for $8,163.96, the best price obtainable, and then issued execution against defendant as aforesaid.

All of which has, of course, none of the elements of a voluntary remission or compromise of the debt with the principal (R. C. C. 2205, 3076), but, on the contrary, evidences a bona fide effort on the part of plaintiff to reduce as far as possible the ultimate liability of the surety, as both equity and law require (R. C. C. 3045).

### VI.

Defendant contends that according to *the condition of its bond*, as set forth in paragraph I of this opinion, it was discharged as soon as plaintiff recovered as much as $5,000 from the railways company; said condition being that—

"If the principal (railways company) indemnifies * * * any person * * * who sustains damages * * * in any amount not to exceed $5,000, * * * then this instrument shall be null, etc."

This contention is not sound, for it fails to take into account that—

"The provisions of the ordinance must be read into the bond, and *they* fix the rights as well as the obligations of the surety." Horsthemke Case, ut supra.

And that ordinance, though fixing the amount of the bond to be furnished at $5,000, yet requires that—

said bond "shall contain a stipulation that in the event any person or persons may sustain damages, * * * he or they shall have his or their right of action on said indemnity bond as fully and to the same extent as if said bond was made and executed directly in favor of the claimant for such damages."

Of course, the amount of said bond *limits the extent* of surety's liability thereunder; but we may search the ordinance in vain for any clause therein limiting the right of action therein to persons who have been damaged *not exceeding $5,000*, or denying a cause of action upon said bond to any person who shall have been *indemnified by the principal up to the sum of $5,000*. And *that* is just the meaning which this defendant now seeks to give to the bond executed by it.

On the contrary, the ordinance (which is the only measure of the surety's liability) very clearly gives a right of action on said bond to "*any person * * * who may sustain damages*," regardless of the amount of such damages; and nowhere restricts said cause of action to such only as shall not have been able to collect as much as $5,000 from the principal of the bond.

### VII.

Of course, this defendant, notwithstanding the judgment of June 4, 1923 (154 La. 61, 97 So. 297), is liable only for such balance as may still be due upon its claim against the railways company; for that judgment must be read in the light of the pleadings upon which it is based, and as *surety* this defendant owes no more than that. R. C. C. 3037.

### VIII.

As the execution issued herein for the full sum of $5,000 (also for 10 per cent. attorney's

fees thereon, which we expressly rejected), defendant was, of course entitled to some relief; but not to the relief sought for.

It should have proceeded by rule ·to have the execution reduced to such amount as it actually owes. That amount is clearly the difference between the *par value* of the stock received by plaintiff and the price for which she sold it, to wit, $3,174.88; together with legal interest thereon from January 13, 1923, and her costs in the proceedings against the National Surety.

### Decree.

The judgment appealed from is therefore reversed; and the injunction herein sued out is now dissolved; reserving to the National Surety Company the right to have the execution herein issued reduced to the amount due as hereinabove set forth. National Surety Company to pay costs.

### On Rehearing.

BRUNOT, J. In our original decree herein, which was handed down by Division C, the judgment appealed from is reversed, and the injunction sued out by the National Surety Company is dissolved with the right to have the execution of the plaintiff's judgment against appellee limited to the recovery of $3,174.88, the difference between the par value of the stock received by plaintiff and the price for which she sold it.

The National Surety Company applied for a rehearing, and in its application therefor it is alleged that defendant executed a surety bond in the sum of $5,000 under what is known as the Jitney Ordinance of the City of New Orleans; that plaintiff was injured while alighting from a Spanish Fort car, owned and operated by the New Orleans Railway & Light Company; that she had obtained a judgment against the New Orleans Railway & Light Company for $10,000 and against defendant surety company for $5,000; that in full satisfaction of her judgment for $10,000 against the New Orleans Railway & Light Company she accepted stock of that company of the par value of $11,338.84, and, on the same day, she sold this stock for $8,163.96 cash. It is alleged that this court erred in not holding that the discharge of the principal on the bond also discharged the surety. The alleged errors in Nos. 2, 3, 4, and 5 are merely amplifications of No. 1, which we have stated fully. It is also alleged that the court erred in holding that the principle announced in the case of Horsthemke v. National Surety Co., 151 La. 65, 91 So. 544, is controlling.

Appellant filed two briefs with respect to this application. In one, the application for a rehearing is opposed. In the other, appellant asks that our original judgment be amended, or, in the alternative, that the rehearing, if granted, be limited to an amendment of the judgment by increasing the sum awarded therein.

A rehearing was ordered without reservation or limitation, and the case is before us as if originally presented; but it is only necessary for us to consider the assignment of errors.

Mr. Benj. W. Kernan, as amicus curiæ, has filed a brief in this suit in which he gives an accurate statement of the case. We cannot improve upon that statement, and we therefore quote it in full:

"Mrs. Hopkins sued the New Orleans Railway & Light Company for damages sustained while alighting from one of its cars of the Spanish Fort line. From a judgment rejecting her demand she appealed, and this court rendered judgment in her favor for $10,000 with legal interest from judicial demand. 150 La. 61, 90 So. 512, 19 A. L. R. 1362. At the time the judgment was rendered, the defendant railway company was being operated by a receiver appointed by the United States District Court.

"Suit was then brought against the National Surety Company, of New York, and the New Orleans Railway & Light Company, alleging

that under Ordinance No. 2346, Commission Council Series, a bond in the sum of $5,000 for each car operated by it had been filed by the New Orleans Railway & Light Company upon which bonds the National Surety Company, of New York, was surety. That under the conditions of the ordinance and the bonds, and because of the fact that there were two cars concerned in the accident to her, plaintiff was entitled to recover in solido against both defendants the amount of the judgment recovered by her against the railway company.

"The right to recover a penalty of 10 per cent. of the judgment was also claimed under Act 225 of 1918.

"Judgment was rendered in favor of plaintiff against the National Surety Company, of New York, for $5,500 on April 19, 1922, which, on appeal to this court, was reduced to $5,000; the claim for the 10 per cent. penalty being rejected (154 La. 62, 97 So. 297), June 4, 1923.

"Under the plan of reorganization of the New Orleans Railway & Light Company, its property was sold in foreclosure proceedings and purchased by the new corporation, the New Orleans Public Service, Inc. Ordinary creditors, Mrs. Hopkins' claim being so ranked, received, under the reorganization plan, $11,338.84 in common stock of New Orleans Public Service, Inc., in full settlement and satisfaction of her judgment; a formal act of settlement being executed and acknowledged before Paul W. Maloney, notary public, her attorney, January 13, 1923. This stock was sold by her for $8,163.96 on the same day it was received. (Tr., 13, 14, and 15.)

"Execution was issued under the judgment of June 4, 1923, and was enjoined by the National Surety Company upon the ground that plaintiff had collected from the principal obligor a sum in excess of its obligation, and had received a settlement of the judgment against the railway and light company.

"The right to action against the National Surety Company, of New York, was grounded on the bond which it had signed as surety for the New Orleans Railway & Light Company under Ordinance No. 2346, Commission Council Series, and the cause for action arose by failure of the New Orleans Railway & Light Company to indemnify her for the injuries she had sustained as a result of its fault in the operation of the car for which the bond was given, as established by final judgment of this court.

"Plaintiff's right to recover against the National Surety Company is fixed by the terms of the ordinance requiring the bond and by the bond. The judgment against the New Orleans Railway & Light Company was merely a judicial recognition of the fact that she had been injured by the fault of that company in the operation of the car covered by the bond, and that she was entitled to $10,000 indemnity therefor."

[1] Ordinance 2346, Commission Council Series, of the City of New Orleans, provides that all persons or corporations engaged in the business of transporting passengers for fares in the city shall file with the commissioner of public safety an indemnity bond for the sum of $5,000 for each and every vehicle so employed. In accordance with this ordinance, the New Orleans Railway & Light Company executed the bond involved in this suit, with the National Surety Company as surety thereon. This bond was approved in the manner and as was required by the ordinance, and was conditioned as follows:

"Now therefore the condition of this instrument is such that if the principal indemnifies the obligee or any other person or persons who may sustain damages to his or their person, or property, as a result of the fault of the principal, its agents, servants or employees, in an amount not to exceed the sum of $5,000.00 for the car used and employed by the principal and known and designated as car No. 509, then this instrument shall be null and void; otherwise to remain in full force and effect."

This obligation is not in the form of an original indemnity contract. It is merely a collateral undertaking and it is limited to $5,000. We are therefore of the opinion that when plaintiff received from the principal a sum equal to or exceeding $5,000, the obligation of the surety was discharged and it was released from further liability on the bond. If this were not true, plaintiff would have the right to enforce the collection of the full amount of the bond regardless of what amount she may have recovered from the principal. Conceding that the provisions of the ordinance must be read into the bond (both of which are quoted in the original opinion), there is nothing in either to indi-

cate that the city council, or the principal or surety, intended any further obligation on the part of the surety other than to indemnify any one injured in person or property, by the fault of the principal, etc., up to the sum of $5,000.

[2] The bond, whatever it may be called, is not an indemnity contract or original obligation; it is merely a collateral undertaking.

"A bond by a third party, that is by one other than the debtor or promisor, is regarded as a guaranty, and the original right is not thereby superseded, but the bond is merely a cumulative security." White v. Cuyler, 6 T. R. 176.

In our original opinion it is assumed that because plaintiff accepted from the New Orleans Railway & Light Company what it was willing to give, her settlement of her judgment against that company was therefore involuntary. The plaintiff, however, declares that the settlement *was voluntary,* and she has evidenced that declaration by an authentic act.

"The voluntary acceptance on the part of the creditor, of an immovable or any other property in payment of the principal debt, is a full discharge of the surety, even in case the creditor should be afterwards evicted from the property so accepted." C. C. art. 3062.

The decision in Horsthemke v. National Surety Co., 151 La. 55, 91 So. 544, is based upon facts entirely different from the facts of this case. In that case the judgment was for $3,000 and the carrier had paid nothing. The decision merely holds that the surety may be sued directly and that it was not necessary to make it a party to plaintiff's suit against the carrier. Inasmuch as the judgment was for $3,000 and the surety was obligated up to $5,000, and the carrier had paid nothing on the judgment against it, the holding in the Horsthemke Case is correct.

For these reasons our former decree rendered herein is avoided, and the judgment of the civil district court, rendered in the following words and figures, to wit:

"It is ordered, adjudged, and decreed that there be judgment herein in favor of the plaintiff, National Surety Company, and against the defendant, Mrs. Augusta D. Hopkins, and the civil sheriff for the parish of New Orleans, perpetuating and making permanent the writ of injunction herein issued on the 14th day of July, 1923, enjoining and restraining the said Mrs. Augusta D. Hopkins and the civil sheriff for the parish of Orleans from proceeding any further under the writ of fieri facias issued in proceeding No. 140460 of the docket of this honorable court, entitled Mrs. Augusta D. Hopkins v. National Surety Co. et al., and from seizing or attempting to seize, and from selling or attempting to sell, plaintiff's property wherever situated"

—be and the said judgment is hereby affirmed. Appellant to pay costs.

Right to apply for rehearing is reserved to plaintiff.

ST. PAUL, J., dissents.